IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

BEAUFORT  DIVISION

| | |
|---|---|
| Tracy Porchea, | ) CIVIL ACTION NO. 2:15-2783-RMG-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Google, Inc., Whiting-Turner Contracting | ) |
| Company, Cleveland Electric Company, | ) |
| and Allison-Smith Company LLC, | ) |
| | ) |
| Defendants. | ) |
| | ) |

This action was filed by the Plaintiff on July 15, 2015 against the named Defendants,

asserting a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et. seq.  All

four of the Defendant companies have filed motions to dismiss pursuant to Rule 12, Fed.R.Civ.P.

Plaintiff has responded to the Defendants' motions, and reply memoranda have also been filed.

Defendants' motions are now before the Court for disposition.[1]

**Allegations of the Complaint**

Plaintiff alleges that on or about January 7, 2014 she began working for the Defendant

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C.  The Defendants have filed motions to dismiss.  As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

1



Allison-Smith Company, LLC ("Allison-Smith") to do work at the Google plant in Moncks Corner, South Carolina. Plaintiff alleges that Allison-Smith, along with the Defendant Cleveland Electric Company ("Cleveland"), had been hired by the Defendant Whiting-Turner Contracting Company ("Whiting-Turner") to do work at the Google plant. Complaint, ¶ 13.

Plaintiff alleges that during the course of her employment with Allison-Smith she was subjected to inappropriate sexual advances, comments and gestures by Demond Swinton, an employee of Cleveland, and that on or about February 27, 2014, she notified Gary Alford, a Cleveland supervisor, about Swinton's conduct. Alford assured Plaintiff that he would handle it. Id., ¶¶ 14-15. Plaintiff alleges that Alford asked her to speak with him and Swinton, but that when Swinton arrived he started screaming and cursing at the Plaintiff while engaging in obscene gestures. Plaintiff alleges that Swinton also physically threatened her, and spit in her face. Plaintiff alleges that she was embarrassed, humiliated and degraded in front of her peers. Id., ¶¶ 16-18.

Plaintiff alleges she reported this incident to Allison-Smith supervisor Jeff Hendricks, who in turn reported everything to Allison-Smith's IBEW[2] 776 Job Steward Don Howard. Id., ¶ 19. Plaintiff alleges that thereafter the IBEW 776 Job Stewards for Cleveland and Allison-Smith met with her and told her to go home and cool off. Plaintiff alleges that she left as instructed, while also calling 911 to report the physical threat and "assaults" made by Swinton. Plaintiff alleges that she exited the construction security gate to wait for the police, and that shortly thereafter Swinton also exited the security gate and stood in front of her. Plaintiff alleges that she became frightened and again called 911 to report that Swinton was now standing in front of her. Id., ¶¶ 19-21.

---

[2]International Brotherhood of Electrical Workers (Local 776).



Plaintiff alleges that when the police arrived at the front security gate, Google security officers called her to let her know that the police were there. Plaintiff then left the construction gate and met the police and the Google security officers at the front gate. Plaintiff alleges that both the police and the Google security officers issued reports regarding these events. Further, the Google security supervisor informed Plaintiff that she had emailed Whiting-Turner regarding these events and had instructed Whiting-Turner to fire Swinton and have him removed from the plant immediately. Id., ¶¶ 22-23.

Plaintiff alleges that when she returned to work the following day, she was called to a meeting with Allison-Smith's General Foreman Dan Bush and IBEW 776 Steward Don Howard. Plaintiff alleges that Bush informed her that there was nothing they could do about Swinton, and that he [Bush] had also been instructed to "write-up" the Plaintiff and another co-worker for being on the wrong side of the building during "Plaintiff's assault". Plaintiff alleges that she thereafter continued seeing Swinton during the day, that she was afraid Swinton was going to attack her, and that her supervisor let her go home early. Plaintiff alleges that she called Whiting-Turner's corporate office and left a message regarding the sexual harassment and threats she was receiving, and that she also called IBEW 776, which told her they knew nothing about these events and that they would investigate and get back to her. Finally, Plaintiff alleges she spoke with her supervisor, Jeff Hendricks, who encouraged her to contact Google directly. Id., ¶¶ 24-25.

However, Plaintiff alleges that on or about March 3, 2014, Hendricks told her that "Defendant Superintendent" was "furious" with her and that her job may be in jeopardy. Plaintiff alleges that she was escorted by Hendricks and Bush to see Scott Hicks, Allison-Smith's

3



Superintendent, and that Hicks told her that the "drama had to stop" and proceeded to interrogate her as to why she had contacted Google and the police. Plaintiff alleges that Hicks told her that if she did not want to get fired she needed to "stop the drama" and not contact Google again. Plaintiff alleges that Hicks also informed her that nothing could be done about Swinton, but that he had spoken with the Defendant Cleveland and Swinton was being reassigned to a different building and would not have any further contact with the Plaintiff. Id., ¶ ¶ 26-28.

Notwithstanding what she had been told by Hicks, however, Plaintiff alleges that she saw Swinton the following day in the same building as before, that Swinton had not been reassigned to a different building, and that thereafter Swinton would stand behind her at safety meetings and say vulgar things to her under his breath. Plaintiff alleges that she complained to her co-workers and supervisors about this sexual harassment, following which, when she reported to work on or about March 11, 2014, her security badge would not work to allow her to enter through the security gate. Plaintiff alleges that when she asked the Google security guard why her badge was not working, she was told that it was "due to her replacement badge, which had been replaced six-eight months prior", and that if she did not turn in her original badge she would be fired. Id., ¶ ¶ 29-30.

Plaintiff further alleges that following her having reported the sexual harassment she was enduring, she was "continually placed on drug test lists and other instant termination lists"; was forced to continue to work with Swinton, during which the harassment and inappropriate behavior continued (thereby creating a hostile work environment); and that upon notifying another co-worker on or about July 11, 2014 that the sexual harassment and inappropriate behavior was continuing, she was again retaliated against and terminated. Id., ¶ ¶ 31-33.

4



Plaintiff alleges that it was the "duty of Defendant Company" to prevent such acts and behavior from occurring and to stop the offending behavior once it had been reported by the Plaintiff, but that the "Defendant Company" did not take appropriate action to resolve the problems and instead disciplined the Plaintiff as retaliation for her complaints, ultimately terminating her employment. Id., ¶¶ 34-36. Plaintiff alleges that this conduct by the "Defendant Company" was retaliatory and created a hostile work environment. Id., ¶¶ 37-38.

In her **First Cause of Action** Plaintiff asserts a claim for sexual harassment in violation of Title VII. In this Cause of Action, Plaintiff alleges that the "Defendant Company",[3] as both Plaintiff's and Swinton's employer, allowed Swinton to maintain his presence near the Plaintiff while at work despite her complaints, thereby allowing her to be subjected to sexual harassment and a hostile work environment. Plaintiff also alleges that the "Defendants" retaliated against her, and constructively discharged her. Id., ¶¶ 40-45.

In her **Second Cause of Action** Plaintiff alleges a "violation of [her] civil rights", again pursuant to Title VII, against the "Defendant Company" due to the "sexual harassment" which allowed a "hostile work environment to exist", and "by retaliating against [her]". Id., ¶¶ 48-49.

Plaintiff seeks monetary damages. See generally, Complaint.

**Discussion**

As noted, all four Defendants have filed Rule 12 motions to dismiss. "[O]n a motion to dismiss, the Court does not weigh the strength of the evidence, and simply considers whether the complaint alleges sufficient facts which, if true, would permit a reasonable fact finder to find

---

[3]For purposes of the allegations of her Complaint, Plaintiff considers all four corporate Defendants to be her employer.



defendants liable." <u>Vogt v. Greenmarine Holding, LLC</u>, 318 F.Supp. 2d 136, 144 (S.D.N.Y. 2004). When considering a Rule 12 motion to dismiss, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the Plaintiff. The motion can be granted only if the Plaintiff has failed to set forth sufficient factual matters in the Complaint to state a plausible claim for relief "on its face". <u>Ashcroft v. Iqbal,</u> 129 S.Ct. 1937, 1949 (2009).

For the reasons set forth hereinbelow, the Defendants' motions should be **granted**, in part, and **denied**, in part.

## I.

## (Time Bar Issue)

Defendants initially argue that Plaintiff's claims are time barred. In making this argument, Defendants note that a Title VII Plaintiff has ninety (90) days from the time the EEOC delivers to her a Right to Sue letter in which to file a lawsuit; see <u>Watts-Means v. Prince George's Family Crisis Ctr.</u>, 7 F.3d 40, 42 (4th Cir. 1993);<u>see also</u> <u>Coleman v. Talbot County Detention Center</u>, 242 Fed. Appx. 72, at ** 1 (4th Cir. July 12, 2007); <u>Aziz v. Orbital Scis. Corp.</u>, No. 98-1281, 1998 WL 736469, at *1 (4th Cir. October 19, 1998) ["Title VII . . . allow[s] an aggrieved party ninety days after receipt of a right-to-sue letter from the EEOC to file a civil action"]; that Plaintiff specifically alleges in her Complaint that she received her Right to Sue letter from the EEOC on or about December 31, 2014; <u>see</u> <u>Complaint</u>, ¶ 2(b); and that Plaintiff did not file her Complaint until July 15, 2015, which was well after her ninety (90) day period for filing suit expired on March 31, 2015.

However, in response to this argument, Plaintiff states that the date of December 31, 2014 set forth in her Complaint is a scrivener's error, noting that the EEOC's Right to Sue letter



was not even mailed until April 17, 2015. As support for this argument, Plaintiff has attached to her opposition to Defendants' motions a copy of the EEOC's Right to Sue letters[4] showing issuance dates of April 17, 2015. Plaintiff's filing of this action on July 15, 2015 was within ninety (90) days of the issuance of these Right to Sue letters. See also Johnson v. St. Barnabas Nursing Home, 368 Fed. Appx. 246, 248 (2d Cir. 2010)["Absent sufficient evidence to the contrary, it is presumed that a Plaintiff received his or her Right to Sue letter three days after its mailing."].

Although all four Defendants filed reply memoranda to Plaintiff's opposition to their motions to dismiss, no Defendant addressed Plaintiff's argument with respect to why her claims are not time barred, or presented any further rationale for dismissal of Plaintiff's claims on that basis. Therefore, the Defendants are not entitled to dismissal of this case on this ground.

## II.

### (Scope of Charge)

In addition to asserting the ninety (90) day time bar argument, discussed supra, the Defendant Google further argues that the allegations of the Complaint regarding Google exceed the scope of Plaintiff's August 15, 2014 administrative charge. Specifically, Google complains that Plaintiff's administrative charge sets forth no substantive allegations regarding Google whatsoever, as the administrative charge alleges only that she worked for a contractor at Google's location in

---

[4]Plaintiff has four separate Right to Sue letters, all dated April 17, 2015, referencing Case Nos. 415-2014-894, 415-2014-968, 415-2014-969 and 415-2014-970, respectively. The Court can consider these exhibits under Rule 12. Cf. Faibisch v. Univ. of Minn., 304 F.3d 797, 802 (8th Cir. 2002) [Finding that motion to dismiss was not converted to summary judgment by attachment of EEOC charge, which was part of public record]; see also Greer v. Board of Trustees of the University of the District of Columbia, No. 13-1728, 2015 WL 4184036 at * 2 n. 2 (D.D.C. July 10, 2015) [Court may properly consider right-to-sue letter and EEOC charge on a motion to dismiss].



Moncks Corner.  Google further argues that Plaintiff failed to set forth a claim for hostile work environment in her administrative charge.

In determining the scope of Plaintiff's exhausted claims, the Court is bound by the scope of Plaintiff's claims as they are set forth in her administrative charge, and only those discrimination claims set forth in the administrative charge and reasonably related thereto or were developed by a reasonable investigation of the claim set forth in the original charge may be maintained in a subsequent lawsuit.  Bryant v. Bell Atlantic MD., Inc., 288 F.3d 124, 132 (4th Cir. 2002); Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996); Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009); see also Sloop v. Mem'l Mission Hosp., Inc., 198 F.3d 147, 148 (4th Cir. 1999) [Exhaustion requirement is a jurisdictional prerequisite to adjudication in federal court].  "Allowing a complaint to encompass allegations outside the ambit of the predicate [administrative] charge would circumscribe [the administrative agency's] investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely . . . charge".  Dorsey v. Pinnacle Automation, Co., 278 F.3d 830, 838 (8th Cir. 2002)(internal quotation marks and citations omitted); Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995)[Claims that exceed the scope of an administrative charge and any claim that would have naturally arisen from an investigation thereof are procedurally barred].

As part of her opposition to Google's motion, Plaintiff has submitted copies of two of her four administrative charges.[5]  In administrative charge 415-2014-894, filed August 18, 2014,

---

[5]See n. 4, supra; Faibisch, 304 F.3d 797, 802; Green, 2015 WL 4184036 at * 2 n. 2.



Plaintiff lists as her employer all four of the named Defendants as well as IBEW 776 (which is not a named Defendant in this action). <u>See</u> Court Docket No. 21-2, pp. 2, 4. Plaintiff alleges in this administrative charge that she was discriminated against on the basis of her sex and was retaliated against when she was working for the Allison-Smith Company at the Google plant in Moncks Corner. Plaintiff then details the harassment to which she alleges she was subjected, states that she reported the harassment to officials with Cleveland Electric and IBEW 775, and that she thereafter continued to be sexually harassed and retaliated against for having reported the sexual harassment in violation of Title VII. <u>See</u> <u>Plaintiff's Exhibit B</u> (Court Docket No. 21-2, pp. 2-4). In administrative charge No. 415-2014-970, filed September 8, 2014, Plaintiff lists her employer as Google, and makes the same claims. <u>See</u> <u>Plaintiff's Exhibit B</u> (Court Docket No. 21-2, pp. 6-7).

Through the filing of these administrative charges, Google was clearly placed on notice that Plaintiff was asserting a discrimination claim against it. <u>Chacko v. Patuxent Inst.</u>, 429 F.3d 505, 510 (4th Cir. 2005)[Noting that the purpose of an administrative charge is to provide notice to an employer of the discrimination alleged and to give the parties the opportunity to resolve the claims asserted]. Whether Plaintiff's claim has merit is not the issue before the Court at this time.[6] Therefore, Google's argument that Plaintiff failed to exhaust her administrative remedies with respect to her claim against Google because Plaintiff did not assert a claim against Google in her administrative charge(s) is without merit.

As for Google's argument that Plaintiff failed to exhaust her administrative remedies

---

[6]While Google contends that it was not Plaintiff's employer and therefore bears no liability for any alleged discriminatory conduct, that is a *defense* to Plaintiff's claim. The only issue here is whether Plaintiff *set forth a claim* against Google in her administrative charge(s).



with respect to a hostile work environment charge because she did not assert a hostile work environment claim in her administrative charge, Plaintiff's exhibits clearly show that she asserted claims for "sexual harassment" in her administrative charges, and the very case Google cites as support for this argument, <u>DeClue v. Central Illinois Light Co.</u>, 223 F.3d 434 (7th Cir. 2000), holds that "[s]exual harassment is the form of sex discrimination in the terms or conditions of employment that consists of efforts either by co-workers or supervisors to make the workplace intolerable or at least severely and discriminatorily uncongenial to women ("hostile work environment" harassment) . . . .". <u>Id.</u>, at 437; <u>see</u> <u>also</u> <u>Harris v. Fork Lift Sys., Inc.</u>, 510 U.S. 17, 21-22 (1993) [Severe or pervasive enough harassment creates an abusive work environment]; <u>Wells v. Gates</u>, 336 F.Appx. 378, 388 (4th Cir. 2009) [Harassment that is extreme is sufficient to create a hostile work environment].

As such, Plaintiff's administrative charge(s) clearly placed Google on notice that Plaintiff was asserting a claim of "sexual harassment"; which can be a claim for hostile work environment. <u>Chacko</u>, 429 F.3d at 510 [Noting that the purpose of an administrative charge is to provide notice to an employer of the discrimination alleged and to give the parties the opportunity to resolve the claims asserted]. Therefore, Google's argument for dismissal of Plaintiff's hostile work environment claim based on her purported failure to administratively exhaust this claim is without merit.

### III.

### (Issue of Joint Employment)

The major argument for dismissal of Plaintiff's claims advanced by all four Defendants is that Plaintiff has failed to establish the necessary employer-employee relationship for



liability under Title VII. Specifically, Defendants argue that while Plaintiff was employed by Allison-Smith, Swinton was employed by Cleveland, and that therefore Allison-Smith cannot be held responsible for Swinton's conduct, nor can Cleveland be held liable to the Plaintiff because Cleveland was not Plaintiff's employer for purposes of a Title VII lawsuit. Google and Whiting-Turner assert that they were not the employer of either Plaintiff or Swinton, and therefore they also cannot be held liable to the Plaintiff for Swinton's conduct.

Plaintiff does not dispute that her actual employer was Allison-Smith, and that Swinton was employed by Cleveland. See Complaint, ¶ 13 ["On or about January 7, 2014, Plaintiff began working for Defendant Allison-Smith"]; ¶ 14 ["During Plaintiff's employment with Defendant Allison, Plaintiff was subjected to inappropriate sexual advances, comments and gestures by Demond Swinton, an employee of Defendant Cleveland . . . ."]. Rather, Plaintiff's theory of liability is based on the so call "hybrid" theory of liability, under which an individual may be found to be jointly employed by two or more entities for purposes of Title VII liability. See Butler v. Drive Automotive Industries of America, Inc., 793 F.3d 404, 414 (4th Cir. 2015) [Adopting the hybrid test for determining joint employment in the Fourth Circuit].

In Butler, the Fourth Circuit held that the joint employment doctrine was "wholly consistent with our precedent", with the doctrine's emphasis being on "determining which entities actually exercise control over an employee". Id., at 409. The Butler Court noted that the joint employment doctrine recognizes the "reality of changes in modern employment, in which increasing numbers of workers are employed by temporary staffing companies that exercise little control over their day-to-day activities", and that the joint employment doctrine therefore serves to "prevent[ ] those who effectively employ a worker from evading liability by hiding behind another entity, such

11



as a staffing agency". Instead, the emphasis is on whether more than one entity "exercise[s] significant control over the same employees". Id., at 410.

The Court in <u>Butler</u> listed nine factors for courts in this Circuit to use in determining whether an individual is jointly employed by two or more entities: 1) authority to hire and fire the individual; 2) day-to-day supervision of the individual, including employee discipline; 3) whether the putative employer furnishes the equipment used and the place of work; 4) possession of and responsibility over the individual's employment records, including payroll, insurance, and taxes; 5) the length of time during which the individual has worked for the putative employee; 6) whether the putative employer provides the individual with formal or informal training; 7) whether the individual's duties are akin to a regular employee's duties; 8) whether the individual is assigned solely to the putative employer; and 9) whether the individual and putative employer intended to enter into a employment relationship. The <u>Butler</u> court believed that the first three factors were the most important, although no single factor was dispositive, with courts also being able to modify the factors to meet a specific industry context. Id., at 414-415.

Turning then to the allegations of Plaintiff's Complaint, Plaintiff alleges that the Defendant Google operates the plant in Moncks Corner, South Carolina, where she worked. Plaintiff alleges that the Defendant Whiting-Turner had been contracted by Google to perform certain work at the plant (apparently electrical in nature), with Whiting-Turner in turn hiring Allison-Smith and Cleveland (apparently as sub-contractors) to assist in the performance of this work. The employees of all three of these companies performed work for Google at Google's plant pursuant to these contractual relationships. Although Plaintiff was employed by Allison-Smith, she was subjected to inappropriate conduct of a sexual nature by an employee of Cleveland (Swinton), the other sub-

12



contractor, all while working at Google as sub-contractors for Whiting-Turner.  The only issue before the Court at this time is whether Plaintiff's allegations are sufficient to set forth a "plausible" claim for liability for all four of the named Defendant companies (or any combination of them) under the criteria of <u>Butler</u>.  <u>Francis, et al, v. Giacomelli</u>, No. 08-1908, (4th Cir. Dec 2, 2009) [Plausibility standard met where the Plaintiff "articulate[s] facts , when accepted as true," that state a plausibility of entitlement to relief]; <u>Vogt</u>, 318 F.Supp.2d at 144 ["[O]n a motion to dismiss, the Court does not weigh the strength of the evidence, and simply considers whether the complaint alleges sufficient facts which, if true, would permit a reasonable fact finder to find defendants liable."].

      Looking at the three factors the <u>Butler</u> court believed were the most important, with respect to whether more than one entity exhibited a high degree of control over the terms of Plaintiff's employment (Factor 1), Plaintiff alleges in her Complaint that although Allison-Smith was her direct employer, when she complained about Swinton's conduct she met with Swinton and Cleveland supervisor Gary Alford.  She also later met with the job stewards for both Cleveland and Allison-Smith, who jointly instructed her to go home and "cool off".  Plaintiff was then informed by a Google security supervisor that she [the Google supervisor] had emailed the Defendant Whiting-Turner regarding the events that had occurred and had instructed Whiting-Turner (not Cleveland) to fire Swinton and have him removed from the plant immediately.  <u>Complaint</u>, ¶ ¶ 13-23.  These allegations are sufficient to give rise to an inference of multiple layers of control over Plaintiff and Swintons' work conditions being exercised by all four of the corporate Defendants.

      Plaintiff was then called to a meeting with Allison-Smith general foreman Dan Bush and was informed that there was "nothing that could be done about . . . Swinton", and that he [Bush] had been instructed to write Plaintiff and another co-worker up for being on the "wrong side of the



building". When Plaintiff thereafter continued seeing Swinton during the day, she called Whiting-Turner's corporate office (not Allison-Smith's) to complain, all while Plaintiff's Allison-Smith supervisor was telling her to contact Google directly concerning her complaints. Id., ¶ ¶ 24-25. Plaintiff was then later told by her Allison-Smith supervisor that Allison-Smith superintendent was furious with the Plaintiff for contacting Google and the police, and to not contact Google again. Plaintiff was also advised that Cleveland had reassigned Swinton to a different building and he would not have any further contact with the Plaintiff. Id., ¶¶ 26-28. Nonetheless, Swinton remained in the same building and continued to harass the Plaintiff, and after Plaintiff complained again, Google did not honor her security badge to allow her to enter the plant to work.

These allegations together with any reasonable inferences that may derived therefrom are sufficient, at least at this early stage of the proceedings, to present a "plausible" claim that all of the named Defendants were exercising at least some degree of control over the terms and conditions of Plaintiff's employment and whether she would be able to continue in her employment at the Google plant. Cf. Butler, 793 F.3d at 415 [Noting that although one company was the entity that formally fired the plaintiff, other entities had effective control over the plaintiff's employment and input into whether the plaintiff should be disciplined or terminated sufficient to subject those other entities to potential liability]; see also Vogt, 318 F.Supp.2d at 144; Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 248 (4th Cir. 2005)["Courts should not dismiss a complaint for failure to state a claim unless 'after accepting all well-pleaded allegations in the Plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief'"], citing Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

With respect to Factor 2 (the exercise of day-to-day supervision, including discipline),



Plaintiff's allegations that she met with not just Allison-Smith supervisors concerning her complaints, but representatives of Cleveland and Google as well, and that not only had Plaintiff called Whiting-Turner's office about Swinton's conduct, but she was advised by a Google supervisor that Google had also contacted Whiting-Turner and instructed them to fire Swinton, are also sufficient (again at this early stage of the proceedings) to set forth a "plausible" claim that the Defendant companies all may have been involved in supervising and/or disciplining both sets of workers. See Butler, 793 F.3d at 415.

With respect to the third factor (where and how the work took place; i.e., whether employees of the various companies worked "side by side", performed the same tasks, and used the same equipment), the allegations of the Complaint are that both of the employees at issue (Plaintiff and Swinton) worked together at the Google plant in the same building, and that Plaintiff and Swinton attended the same meetings. See Complaint, ¶ 29. Therefore, although employed by different companies, Plaintiff alleges they attended the same work meetings "side by side", where Swinton would stand behind her and say vulgar things to her. Further, even though Plaintiff and Swinton were employed by two different companies (Allison-Smith and Cleveland), they both performed their duties as subcontractors of Whiting-Turner working for Google at Google's plant, and in pursuing her complaint Plaintiff met with or discussed her problems with all four corporate entities or their representatives. These entities all also discussed the Plaintiff's complaints with each other, giving rise to a plausible inference that how to handle Plaintiff's complaint was jointly considered and addressed among these corporate Defendants. Butler, 793 F.3d at 410 [Emphasis is on whether more than one entity "exercise[s] significant control over the same employees"]; Francis, et al,, No. 08-1908 [Plausibility standard met where the Plaintiff "articulate[s] facts , when accepted

15



as true," that state a plausibility of entitlement to relief].

While the Defendants argue that Allison-Smith had no control over Swinton, and that Google, Whiting-Turner, and Cleveland had no degree of control over Plaintiff sufficient to subject them to liability as "joint employers" under Title VII, this is what the actual evidence will or will not show. These arguments are not, however, a basis for a dismissal of Plaintiff's claim for joint liability on a Rule 12 motion to dismiss. Mediacom Southeast LLC v BellSouth Telecommunications, Inc., No. 10-6117, 2012 WL 678166, at * 4 (6th Cir. Oct. 6, 2011)[crediting the Defendant's, rather than the Plaintiff's, version of the facts unduly raises the pleading standard beyond the heightened level of Iqbal]; Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) [A complaint attacked by a Rule 12 motion to dismiss does not need detailed factual allegations; rather, the factual allegations must only be enough to raise a right to relief above the speculative level].

Defendants' motions are simply premature. The Court has no evidence before it at this time and cannot dismiss Plaintiff' Complaint on the basis that the Defendants cannot be held jointly liable under the "hybrid" theory of joint liability based on the arguments presented. See Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002)["[W]hen [dismissal for failure to state a claim] involves a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged'"], citing Harrison v. United Postal Service, 840 F.2d 1149, 1152 (4th Cir. 1988); see also Vogt, 318 F.Supp.2d at 146 [Finding that Plaintiffs had asserted sufficient facts to allege improper conduct by the named defendants, and that "[w]hether plaintiffs will be able to demonstrate the truth of those facts after discovery is an entirely different question, but plaintiffs are entitled to make the attempt"]; Francis,

16



et al,, No. 08-1908 [Plausibility standard met where the Plaintiff "articulate[s] facts , when accepted as true," that state a plausibility of entitlement to relief].

## IV.

### (Causes of Action Asserted)

Turning then to the specific claims being asserted by Plaintiff in her Complaint, Defendants initially complain that Plaintiff has improperly combined and jumbled her claims such that it is unclear what Plaintiff is intending to assert as her actual causes of action.  The undersigned agrees.

First, while it appears from a plain reading of the allegations of Plaintiff's Complaint that she is intending to assert claims for hostile work environment and retaliation, Plaintiff herself also addresses an additional claim of gender discrimination in her briefs.  However, the undersigned agrees with the Defendants that Plaintiff has failed to allege a disparate treatment gender discrimination claim in her Complaint, as she has clearly alleged that the conduct to which she was subjected was "sexual harassment", which (as was previously noted herein, supra) is a hostile work environment claim, even further specifically styling her discrimination claim as being one for "sexual harassment".  Cf. Shetty v. Hampton University, No. 12-58, 2014 WL 280448 at * 5 (E.D.Va. Jan. 24, 2014) [Claim for disparate treatment is a separate and distinct claim from a hostile work environment claim].  A retaliation claim is also a separate and distinct claim from a disparate treatment claim.  Miller v. City of Ithaca, No. 10-597, 2010 WL 3809842 at * 6 (N.D.N.Y. Sept. 22, 2010) [Noting that factual allegations set out a claim for retaliation, not for disparate treatment].  Therefore the undersigned agrees with the Defendants that Plaintiff has failed to allege a disparate treatment sex discrimination claim in this lawsuit.  Harper v. United States, 423 F.Supp. 192, 196

17



(D.S.C. 1976)["[W]here the claims in a complaint are insufficiently supported by factual allegations, these claims may be properly dismissed by summary dismissal"]; see Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002)[Plaintiff has burden of alleging facts sufficient to state all the elements of a claim].

Further, it is readily apparent that Plaintiff's two causes of action in the Complaint actually set forth the same claims, while each also includes claims that should be asserted in separate causes of action, not in one cause of action. For example, in her First Cause of Action Plaintiff asserts (at least according to the heading of the cause of action) a claim for sexual harassment (hostile work environment) in violation of Title VII. However, in the body of her First Cause of Action, Plaintiff also alleges that the hostile work environment she was forced to endure was in retaliation for her having complained of discriminatory conduct. These are two separate claims or causes of action. Murphy v. Suffolk County Community College, No. 10-251, 2011 WL 5976082 at * 7 (E.D.N.Y. Nov. 29, 2011) [Finding that Plaintiff's disparate treatment claim, hostile work environment claim, and retaliation claim are all distinct claims that should be alleged in separate counts].[7] Plaintiff's Second Cause of Action, styled as being a claim for a violation of Plaintiff's "civil rights", makes these same two claims, again under Title VII.

Even so, although Plaintiff should have asserted each of these claims in separate causes of action, since the allegations of her Complaint are sufficient to place the Defendants on

---

[7]The undersigned is constrained to note that this is a continuing issue with the law firm representing the Plaintiff in this case. Plaintiff's law firm has previously been advised in other civil rights cases it is litigating in this Court that claims for disparate treatment, hostile work environment, and retaliation are separate and distinct claims that should be set forth in separate causes of action, yet it continues to improperly "jumble" these claims together in the pleadings it files in this Court.



notice that they are being sued for retaliation and sexual harassment (hostile work environment), the undersigned does not find that Plaintiff's failure to assert these claims in separate causes of action is in and of itself grounds to dismiss either of these claims at this time.  See Austen v. Catterton Partners V, LP, 709 F.Supp.2d 172 (D.Conn. 2010)[Plaintiff only required to provide adequate notice to the defendant of the basis for the lawsuit and to make a claim plausible]; Brooks v. Ross, 578 F.3d 574, 581 (7th Cir. 2009)[requirement is that Plaintiff's allegations provide sufficient notice to defendants of the plaintiff's claim].

## V.

### (Sufficiency of Allegations)

Finally, Defendants argue that Plaintiff has failed to set forth sufficient factual allegations to support her hostile work environment or retaliation claims.  This argument is without merit.

**Retaliation Claim**.  In order to survive the Defendants' motion to dismiss her retaliation claim, Plaintiff's allegations need only be sufficient to reasonably infer a prima facie case of retaliation;[8] i.e., that 1) she engaged in activity protected under Title VII, 2) the Defendants took an adverse employment action against her, and 3) a causal connection exists between the protected activity and the adverse action.  Lettieri v. Equest, Inc., 478 F.3d 640, 650 (4th Cir. 2007); Williams

---

[8]See Gladden v. Solis, No. 11-3120, 2012 WL 3009275 (3rd Cir. July 24, 2012)[To survive a motion to dismiss, Plaintiff need only set forth allegations that raise a "reasonable expectation" that discovery will reveal evidence of necessary elements of the prima facie case]; Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010); see also Johnson v. Scotts Co., No. 11-20, 2011 WL 6415521 at * 2 (S.D.Ohio Dec. 21, 2011)["To survive Defendant's motion to dismiss, [plaintiff] need only establish a prima facie case of discrimination."] (citing Cox v. Shelby State Comty. College, 48 Fed. Appx. 500, 506 (6th Cir. 2002).



v. Cerberronics, Inc., 871 F.2d 452, 457 (4th Cir. 1989); Munday v. Waste Management of North America, Inc., 127 F.3d 239, 242 (4th Cir. 1997); see Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58 (4th Cir. 1995) [The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged].

Plaintiff has alleged that she engaged in protected activity by complaining about Swinton to her supervisor at Allison-Smith, to Cleveland Supervisor Alford, to both the Allison-Smith and Cleveland job stewards, to the Whiting-Turner Corporate Office, as well as to Google, where a Google security supervisor informed Plaintiff that he had also contacted Whiting-Turner regarding her complaints. See Complaint, ¶¶ 14-20, 25-28. Therefore, Plaintiff has clearly set forth factual allegations that she engaged in protected conduct. Cf. Rodas v. Town of Farmington, 918 F.Supp.2d 183, 189 (W.D.N.Y. Jan. 16, 2013)["'Protected activity' includes opposing employment practices that are prohibited under Title VII (such as discrimination based on race, color, religion, sex, or national origin), or making a charge of discrimination, or participating in any investigation, proceeding, or hearing arising under Title VII."].

Plaintiff also alleges that after she engaged in protected conduct, the Defendants took adverse employment actions against her by not restraining Swinton and allowing work conditions to persist under which Swinton was able to continue to harass her even while telling her that if she continued to complain, in particular to Google, that her job could be in jeopardy, by harassing her about her security badge, by placing her on drug test lists and "instant termination" lists, and by ultimately terminating her employment. Id., ¶¶ 15-21, 24, 26-27, 29-31, 33. See Ainsworth v. Loudon County School Bd., 851 F.Supp.2d 963, 976 (E.D.Va. 2012) ["Adverse employment actions are those that negatively impact the terms, conditions, or benefits of employment, . . . ., termination



being the quintessential example . . . ."].

Finally, Plaintiff has also set forth sufficient factual allegations to create at least an inference of a causal connection between her having engaged in protected activity and the adverse actions to which she was subjected, specifically alleging that after she complained about Swinton's conduct Swinton was allowed to curse at her and spit in her face without any corrective action being taken, that the Defendants' refused to remove Swinton from her work place or to discipline him in any way, by telling Plaintiff that if she continued to complain that her job would be in jeopardy, and that shortly after Plaintiff notified another co-worker that the sexual harassment and inappropriate behavior was continuing, she was terminated.  Id., ¶ ¶ 16-18, 24-29, 32-33.  See Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) [A retaliation claim may be established where the Plaintiff has "evidence from which a reasonable fact finder could conclude that a causal connection exists between the protected activity and the adverse action(s)]; Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008)[Temporal proximity is sufficient to establish causal connection where an adverse employment action occurs very close in time to when an employer learns of a protected activity]; Pantoja v. American NTN Bearing Mfg. Corp., 495 F.3d 840, 850 (7th Cir. 2007) [Finding that timing was "suspicious enough to suffice to support [a] prima facie case."]; see also Blue v. International Broth. of Elec. Workers Local Union, 159, 676 F.3d 586 (7th Cir. 2012)[Suspicious "[t]iming supports an inference of retaliation."]; Hunt-Golliday v. Metropolitan Water Reclamation District of Greater Chicago, 104 F.3d 1004, 1013 (7th Cir. 1997)[noting that "suspicious timing does constitute circumstantial . . . evidence to support a claim of discrimination"]; Chavez v. City of Arvada, 88 F.3d 861, 866 (10th Cir. 1996) [Holding that a retaliatory motive may be inferred when an adverse action closely follows protected activity.

21



Therefore, Plaintiff has set forth sufficient factual allegations to give rise to a "plausible" claim of retaliation. Ashcroft, 129 S.Ct. at 1949; cf. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-256 (1981)[the burden of establishing a prima facie case is not onerous].

**Hostile Work Environment**.  As for Plaintiff's hostile work environment claim, to avoid dismissal of this claim Plaintiff's Complaint must have factual allegations sufficient to state a plausible claim that 1) she was subjected to unwelcome conduct in a work related setting; 2) the conduct complained of was in retaliation for protected conduct;[9] 3) the conduct was sufficiently severe or pervasive to alter her condition of employment and to create an abusive work environment; and 4) the conduct was imputable on some factual basis to her employer.  EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009); Ocheltree v. Scollon Productions, Inc., 308 F.3d 351, 356 (4th Cir. 2002), rehearing en banc, 335 F.3d 325 (4th Cir. 2003), cert. denied, 124 S.Ct. 1406 (2004); Spicer v. Com.of Va. Dep't of Corrections, 66 F.3d 705, 710 (4th Cir. 1995); Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999); Scott v. Health Net Federal Services, LLC, No. 11-1947, 2012 WL 340216 at * 2 (4th Cir. Feb. 3, 2012).

Reviewing the allegations of Plaintiff's Complaint, Plaintiff alleges that she was subjected to unwelcome conduct in a work related setting (Complaint, ¶¶ 14, 16-18, 24, 26-27, 29-33), the conduct complained of was based on her gender and out of retaliation for her having engaged in protected conduct (Id.), the conduct was sufficiently severe or pervasive to alter her

---

[9]A hostile work environment claim based on retaliation is recognized in the Fourth Circuit, which is binding authority on this Court.  See Wells v. Gates, 336 Fed. Appx. 378, 387 (4th Cir. 2009) [Noting standard for Title VII hostile work environment claim based on retaliation]; cf. Van Gunten v. Maryland, 243 F.3d 858, 869-870 (4th Cir. 2001).



condition of employment and create an abusive work environment, and that this conduct was imputable on some factual basis to the Defendants. Complaint, ¶¶ 14, 16-18, 24, 26-27, 29-33. Cf. May v. Schering Corp., No. 09-170, 2010 WL 377012, at * 8 (D.Me. Jan. 26, 2010)[Finding that although Plaintiff, who alleged she refused to accede to sexual advances, did not elaborate with regard to the frequency and nature of these advances, she was not required itemize every incident to survive a motion to dismiss], adopted by, 2010 WL 377012 (D.Me. Feb. 22, 2010); see also Twombly, 550 U.S. at 555 [A complaint attacked by a Rule 12 motion to dismiss does not need detailed factual allegations; rather, the factual allegations must only be enough to raise a right to relief above the speculative level].

Under the applicable standard of review, Plaintiff's allegations state a claim for a hostile work environment sufficient to defeat the Defendants' motion to dismiss. Francis, et al., No. 08-1908 [Plausibility standard met where the Plaintiff "articulate[s] facts , when accepted as true," that state a plausibility of entitlement to relief]; see also Austen, 709 F.Supp.2d at 171 [Iqbal's plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]. And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely"]. Therefore, while Plaintiff will still have to submit *evidence* sufficient to establish that the Defendants actually engaged in the conduct alleged, the allegations of the Complaint are sufficient to allow her hostile work environment claim to go forward at this time. Vogt, 318 F.Supp.2d at 146 [Finding that Plaintiffs had asserted sufficient facts to allege improper conduct by the named defendants, and that "[w]hether plaintiffs will be able to demonstrate the truth of those facts after discovery is an entirely



different question, but plaintiffs are entitled to make the attempt"].

## Conclusion

Based on the foregoing, it is **recommended** that the Defendants' motions to dismiss be **denied** at this time for the reasons stated. Notwithstanding this recommendation, however, it is also **recommended** that Plaintiff only be allowed to proceed on the two claims addressed on the merits hereinabove; retaliation and hostile work environment.

Further, although these claims have not been properly pled in separate causes of action in the Complaint, the undersigned does not find that a dismissal of Plaintiff's Complaint due to this deficiency is warranted at this time. Veney, 293 F.3d at 730 ["[W]hen [dismissal for failure to state a claim] involves a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged'"], citing Harrison, 840 F.2d at 1152. Rather, the Court may in its discretion require Plaintiff to re-plead these claims through the filing of an Amended Complaint if that is deemed to be necessary. See Harmon v. Unisys Corp., 356 Fed. Appx. 638, 641 (4th Cir. Dec. 4, 2009)[Finding that although Plaintiff's complaint could have been more specific with regard to her claims, she should have been allowed to amend her complaint rather than having claims dismissed with prejudice].

The parties are referred to the Notice Page attached hereto.



November 3, 2015                              Bristow Marchant
Charleston, South Carolina                   United States Magistrate Judge

24

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4ᵗʰ Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

